55 CCPA

**Application of Corlise M. SWEET.**

**Patent Appeal No. 7916.**

United States Court of Customs and Patent Appeals.

May 2, 1968.

Rehearing Denied July 3, 1968.

Joseph Schimmel, Washington, D.C. (Fred W. Sherling, Washington, D.C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND and KIRKPATRICK.*

* Senior District Judge, Eastern District of Pennsylvania sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals[1] affirming the rejection of claims 1, 16, 17, 22, and 37 [2] of application serial No. 54,609, filed September 8, 1960, entitled "Lathe Turret Equipped With Automatic Adjusting Tandem Tools."

The invention relates to tandem cutting tools for lathes, which tools are simultaneously adjustable for turning a workpiece at different diameters. Sufficient details of the structure and operation will be apparent from consideration of Figs. 1 and 3 of the application drawings:

FIG. 1      FIG. 3

Fig. 1 is a side elevation of a square lathe turret 18 carrying a tandem turning tool having one cutting element above the center line of a workpiece 1 and another cutting element mounted an equal distance below the center line and offset slightly along the lathe axis.[3] A replaceable insert 7 carrying the upper cutting element 2 is mounted in an adjustable shank 12 while a corresponding insert 9 carrying the lower cutting element 3 is mounted in adjustable shank 13. Referring also to Fig. 3, which shows the reverse side of the turret, the shanks 12

1. Consisting of Dracopoulos and Brewrink, Examiners-in-Chief, and Angel, Acting Examiner-in-Chief, opinion by Brewrink.

2. Twelve other claims remaining in the application were allowed by the examiner.

3. Although the complete lathe structure is not shown in Figs. 1 and 3, the turret is mounted on a carriage that is driven along the lathe bed parallel to the axis during the turning operation, and a cross-slide is provided for adjusting the turret on the carriage in a direction perpendicular to the lathe axis to control the cutting diameter. The specification describes the offset relationship of the cutting elements as follows:

In order to obtain maximum metal removal [,] cutting element 3 should be set beyond cutting element 2 in the direction the carriage is feeding an amount equal to one half the feed of the carriage for one revolution of the workpiece.

and 13 are mounted on rotatable shafts, having splines 19, 21, extending through the turret, to the opposite ends of which shafts are keyed meshing gears 16 and 20, respectively. A rack 22, which engages gear 16, has a cam-follower at its upper end which rides in a slot 24 in cam 25, mounted for rotation on turret 18 and having a sprocket gear 27 fixed thereto by a nut 28. The cutting elements carried by shanks 12 and 13 are so arranged as to cut at the same distance from the center of the workpiece 1 with the cutting faces of the elements disposed along radii extending from the center of the workpiece.

When it is desired to change the diameter of the cut, the turret 18 is moved on the cross-slide of the tool carriage of the lathe to bring the cutting tool to the new diameter. Also, the cam 25 is rotated by means of sprocket 27 to cause the cam-follower on rack 22 to move the rack vertically and thereby rotate the gear 16 to such position that the upper cutting element 2 assumes the radial direction at the new position. Gear 16 in turn drives meshing gear 20 in the opposite direction so as also to bring the lower cutting element 3 carried by shank 13 to radial position. The adjusting movement of the cam can be geared to the movement of the cross-slide on the carriage so as to adjust the cutting elements to radial positions automatically for each turning diameter selected. Alternatively, the sprocket 27 may be replaced by a hand-operated wheel for rotating the shanks 12 and 13.

The turret 18 also includes single cutting elements 29 secured in place at the corners of the turret by screws 30. The turret may be rotated on its carriage to move the tandem tool away from the workpiece and place a selected one of the single cutting elements in operating position adjacent the workpiece.

Representative claims 1 and 16, with the recitations in issue italicized, read:

1. In a turning apparatus combination having a workpiece center of rotation and a cross slide; a tandem cutting tool, comprising a tool holder, at least two cutting elements carried by said holder in closely spaced relation one above the other to cut simultaneously at substantially the same distance from the lathe's center of rotation, each successive cutting element being offset from the one immediately thereabove in the direction of tool feed to provide a total cut per revolution of the workpiece corresponding to the sum of the cuts of the cutting elements and *means to simultaneously change the position of said cutting elements for cutting a different size diameter whereby said cutting elements will cut at substantially the same distance from the center of rotation on said different size diameter.*

16. The method of cutting more than one diameter on a large workpiece in a lathe with a tandem turning tool, comprising cutting a workpiece with at least two tandem cutting elements, said cutting elements are held one above the other on one side of the workpiece, said cutting elements cut on substantially the same workpiece diameter, at least one of said cutting elements is offset beyond a cutting element above it in a direction the cutting elements move when cutting, moving said cutting elements along the longitudinal length of the workpiece whereby at least two of the cutting elements will cut separate helical paths on the workpiece circumference, *and when it is desired to cut a larger diameter move the tool holder that holds the cutting elements to a greater distance from the lathes center of rotation, and after the tool has moved simultaneously adjust the cutting elements whereby their top faces are approximately radial with the lathes center of rotation,* and continue cutting the workpiece by moving the cutting elements along the longitudinal

length of the workpiece thereby by using said tandem cutting elements that can be quickly adjusted for cutting different size diameters metal can be removed much faster from a workpiece than with a single cutting element.

Claims 17, 22 and 37, like claim 16, are method claims.

The references relied on in the rejection are:

| Blancke (British) | 19,607 | June 5, 1902 |
| Norton | 1,949,512 | March 6, 1934 |

Blancke discloses a tool holder, the most pertinent form of which is shown in Figs. 3 and 4, reproduced below:

In the drawings, each of two adjacent sets of turning tools includes three cutting elements $k$, $b$, and $k$, disposed to cut at the same diameter [4] as shown in Fig. 3. Fig. 4 shows that the three cutters in each set are offset along the axis of the workpiece $p$. The two end cutting elements $k$, $k$ of each set are shown as disposed at substantially equal distances on opposite sides of the middle cutter $b$. Screws are provided for adjusting the cutter elements $k$, $k$ both laterally and radially to the workpiece and for adjusting the cutting element $b$ radially.

Norton discloses a lathe arranged for simultaneous adjustment of tandem cutting tools disposed on diametrically opposite sides of a workpiece to be turned in axially offset relationships. Mechanism is provided whereby movement of a single operating member simultaneously moves the opposed cutting tools toward or away from the workpiece with the result that both tools are continuously disposed to cut at the same distance from the work center. Because the adjusting movements of the tools are along substantially the same diameter of the workpiece, although in opposite directions, no angular adjustment relative to the workpiece is required.

The examiner rejected claim 1 as unpatentable over Blancke under 35 USC 103. He held that the recitation of "means to simultaneously change the position of the cutting elements for cutting a different size diameter" is so broadly stated in the claim as to read on a conventional lathe cross-feed screw, "which is obviously a part of the schematic show-

---

4. Appellant contends that the showing of the three tools all cutting on the same diameter in Blancke's Fig. 3 is a mistake in the drawing but we do not find any persuasive evidence to support that contention.

ing of Figs. 3 and 4" of Blancke. The "whereby" clause following that recitation was regarded as stating desired results without imparting any added limitations of structure.

The examiner also stated:

* * * the adjusting screws $l$ and $f$ of Blancke 607 are a broad means to simultaneously adjust the positions of the elements $k$, $b$, $k$, if a mechanic who is skillful with both hands desires to adjust any of these elements at the same time in order to expedite the finishing of a turning operation in a shorter time. It being noted that Norton 512 discloses the desirability of simultaneously adjusting cutting elements in a tandem cutting operation.

With respect to the method claims, the examiner held that a "skillful" mechanic could obviously effect simultaneous adjustment of the cutting elements $k$, $k$ with the on-center element $b$ through the use of the adjusting screws $f$ and $l$ of Blancke. He regarded such adjustment as obvious in view of Norton's teaching of simultaneous adjustment of tandem cutting elements.

The board stated that it shared the examiner's view that the recitation of means to simultaneously change the position of cutting elements in claim 1 "does not specifically require a single point of application" of the adjustment action. It also took the position that "the appealed claims are so general in expression of the adjusting action" as to encompass adjustment of the reference tools in a machine which is out of service and the tool movement computed or controlled by movement toward the new positions by templets or other position determining devices. Norton was acknowledged as of interest by the board, which, however, did not "find it neces-

sary * * * to resort to combination of the mechanical structure thereof with that taught by Blancke."

Appellant urges that claim 1 should be considered in connection with the provision of 35 U.S.C. § 112 [5] that an element may be expressed as a means for performing a specified function and that the "means" expression shall be construed to cover the corresponding structure.

That provision of the statute is pertinent to the Patent Office position that the "means" recitation of claim 1 does not require a single point of application of the adjustment action, a position with which we disagree. We think the recitation in claim 1 of "means to simultaneously change the position of said cutting elements for cutting a different size diameter" requires a structure which is itself inherently operable to carry out the adjustment of both elements "simultaneously," as distinguished from structure characterized merely in that a *plurality* of means can be adjusted simultaneously by an operator. Particularly since the Patent Office has not contended that the terminology is indefinite in any way, the reasonable construction of the present "means" recitation in the light of 35 U.S.C. § 112 is that the cutting elements are operatively interconnected so far as the mechanism for adjusting them is concerned. See In re Danly, 263 F.2d 844, 46 CCPA 792. We therefore do not find the mere fact that one or more lathe operators might adjust the positioning screws for individual cutting elements of Blancke simultaneously to demonstrate that claim 1 is unpatentable.

However, a recitation of "means" for performing a function is interpreted broadly to cover all means capable of performing the stated function and is not limited to the particular

5. The pertinent last paragraph of 35 U.S.C. § 112 reads:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

structure which the application may disclose. See Phillips v. Lynch, 367 F.2d 601, 54 CCPA 781. Here, claim 1 does not specify that the cutting elements are oriented to keep their cutting edges in alignment with radii of the workpiece when their position is changed for cutting a different size diameter.[6]

We agree with the examiner that cross-feed mechanism for moving the tool toward and away from the workpiece undoubtedly is contemplated with the structure of Blancke's Figs. 3 and 4. As the feed screw for that mechanism is adjusted, the outer cutting elements $k$, $k$ of each set will obviously be maintained continuously at equal distance from the center of rotation of the lathe. It is true, as appellant urges, that the center element $b$ will not be maintained at the same diameter as the outer elements but will be farther from the work center when the turning diameter is increased and closer to it when the diameter is decreased. However, we think it would be obvious to one skilled in the art that he could rely solely on the cross-feed of the tool to make small changes in turning diameter rapidly, particularly when the changes amount to only a slight *increase* in the diameter and even though the greater displacement would move the center tool out of contact with the work. We also agree with the argument, made by the solicitor, that it would be obvious to eliminate the center element $b$ if found to be in the way for such adjustment to a smaller diameter, especially since Blancke contemplates a modification using but two tools. It also is clear that such arrangement would meet the broad requirement of the whereby clause that the cutting elements "cut at substantially the same distance from the center of rotation on said different size diameter," despite the cutter edges being in less than perfect alignment with radii of the work. We therefore agree that claim 1 is so broadly drawn as to be obvious in view of Blancke under 35 U.S.C. § 103.

Method claim 16 requires movement of the tool holder to place the cutting elements at a position to cut on a larger diameter followed by "simultaneously" adjusting the top faces of the cutting elements to positions radial to the lathe center of rotation. Claim 17, drawn as dependent on claim 16, specifies that "the tool holder and the cutting elements are all adjusted simultaneously * *." It is apparent that the board was correct in its position that the claim language is broad enough to include moving and adjusting the cutting elements while the machine is out of service and no cut is being made on the workpiece.[7] It is also clear that these method claims do not require specific apparatus for making the tool position adjustment but can be satisfied by manual adjustment of the tools independently.

Upon stopping a machining operation to adapt the tool of Blancke for cutting on a larger diameter, the expected procedure would be to first move the tool holder on the cross-slide to the new diameter and then adjust the cutting elements $k$, $k$ to their new radial positions. We agree with the examiner and board to the extent that we think that a skilled mechanic would find it obvious, either by using both his hands or obtaining assistance from a second operator, to loosen, reposition radially, and then tighten both cutting elements $k$, $k$ simul-

---

6. Appellant's argument against the rejection of claim 1 is at least partially based on a mistake as to what the claim recites since his brief describes it as stating "simultaneously adjust the cutting elements whereby their faces are approximately radial with the lathe's center of rotation." That expression does not appear in the claim.

7. Appellant contends that it would be impractical to stop the lathe to readjust the tools for each new diameter because the time required would result in the waste of "much more time than would be saved by the tandem tools." However, he does not point to any claim limitations which require that the adjustments be made while the cutting operation is in progress.

taneously. Thus, we are satisfied that claim 16 is obvious in view of Blancke.

However, claim 17 differs from claim 16 by requiring that the adjustment of the angle of the cutting elements be made simultaneously with, rather than *after*, the movement of the tool holder to the new diameter. That is the procedure provided through appellant's disclosed interconnection of the sprocket for rotating the cam for radially adjusting the cutting elements with the mechanism for moving the cross-slide to the new cutting diameter. We do not think that a person skilled in the art would derive any suggestion of so coordinating the two different phases of the adjusting procedure from a consideration of Blancke. Neither do we think that Norton, which requires no adjustment of the angle of the cutting elements, provides any suggestion of so operating the Blancke construction. Accordingly, the rejection of claim 17, whether on Blancke alone or Blancke in view of Norton, cannot be sustained.

The remaining claims, 22 and 37, call broadly for the step of "simultaneously" adjusting the cutting elements "for cutting a different size diameter" with no recitation that they are reoriented at the new diameter to keep their cutting edges in alignment with radii of the workpiece. The language thus corresponds in scope to that of claim 1 and claims 28 [8] and 37 are obvious over Blancke for the same reasons set forth in the specific consideration of that claim previously given herein.

For the reasons stated, the rejection is affirmed as to claims 1, 16, 22 and 37 and reversed as to claim 17.

Modified.

8. Claim 22 additionally calls for use of a single cutting element in the turret with the tandem tool for alternative use therewith. However, the examiner noted that the basic function of tool turrets is to accommodate a plurality of tools and appellant has neither controverted that state-

ment nor argued that the feature renders the claim patentable.