59 CCPA
**Application of Albert J. FORMAN.**
**Patent Appeal No. 8742.**

United States Court of Customs
and Patent Appeals.

Aug. 10, 1972.

Paul H. Blaustein, Sandoe, Hopgood & Calimafde, New York City, attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and CLARK, Justice (Ret.), United States Supreme Court, sitting by designation.

LANE, Judge.

This appeal is from that portion of the decision of the Board of Appeals af-firming the rejection of claims 2, 16 and 17 of appellant's application Serial No. 487,251, filed on September 14, 1965, entitled "Graphic Transducing System." [1] We affirm.

In appellant's words, the subject matter on appeal relates to:

> [An] automatic drafting system which is capable of producing automatically, or semi-automatically, a composite drawing from a given plurality of characters, e. g. straight lines, curves, etc.

> Drafting is an art of antiquity. Over the last several hundreds of years, little change has been made to the actual technique of drafting, apart from certain refinements made to drafting equipment. In our highly organized society, the mechanics of drafting have become highly routined and repetitious, but nonetheless exacting. Since most ordinary drafting is so exacting, it is very time consuming and, therefore, expensive.

> Some attempts have been made to expedite drafting, such as pantograph and mechanical accessories, but even these devices require skilled draftsmen, and do not materially reduce the time required to produce a drawing.

> I have found that most drawings require approximately 5 to 20 standard characters. A few of these characters are the straight line, the circle and segments thereof, and the ellipse. These standard characters are used with variations in size and disposition.

> Accordingly, it is an object of my invention to provide means for either storing these standard characters in physical, photographic or electrical form, or for electrically generating signals corresponding to the desired character. The desired character is selected automatically from the storage or generating means and the character, or the signal representing the

1. Stated by appellant to be a continuation of application Serial No. 717,202, filed February 24, 1958.

character, is translated into a form capable of effecting the production of the character, in desired dimension and disposition, on the drafting medium.

One embodiment of the invention, elected for prosecution in response to the examiner's requirement for restriction under the Patent Office Rules, is represented in Fig. 4 reproduced below:

# FIG. 4.

[A6139]

---

The specification describes the Fig. 4 embodiment as follows:

The automatic drafting system may * * * take the form of an electronic system as shown in Fig. 4. In one embodiment of this arrangement, the basic characters are generated in the nature of signals which are converted into the desired graphical symbols.

A character generator control, comprising a plurality of switches 23 permits selection of a desired character by operation of a particular switch. The switches are respectively connected to suitable generating circuits capable of generating signals which may be symbolically transposed into the desired character. By way of example, a basic oscillator circuit 24 is shown

as one possible type of curve generating circuit. It is to be realized, however, that instead of physical generators, pre-recorded signals on cards, tape or drum may be utilized.

The generated signals are applied to amplifiers 25, 26 for amplification of the vertical and horizontal components of the signal, respectively. The outputs of the amplifiers 25, 26 are applied to a translator 27 which converts the signals to servo or motor driving impulses.

A segment selector 28, comprising a variable control for a basic type of pulse blanking circuit 29, is connected to the translator 27 for blanking out predetermined segments of the generated signal. Signal generators, trans-

lators and blanking circuits are well known and further detailed description of these circuits is considered unwarranted.

The output of the translator 27 is connected to an x-y plotter 31 using horizontal and vertical servos 32, 33, respectively, to move a trace pen along the curves determined by the translator.

A coordinate selector 34, of a pushbutton type (similar to an adding machine keyboard) selects an x-y position which will be a point related to the final position of the selected character.

The output of the coordinate selector 34 is connected to a plotting board 35 which biases the x-y plotter servos to position the character on a desired area or horizontal and vertical position of output. The plotting board 35 may instead be operated manually, if desired.

The plotting board comprises a horizontal and vertical impedance network 36 between crossover points, preferably resistance but may be inductance, capacitance, diode, etc., which produces voltages unique for each position.

The appealed claims read as follows:

2. An automatic drafting system, comprising a source of information corresponding to a plurality of predetermined drafting characters, the drafting consisting of a plurality of such characters and parts thereof, means coupled to said source for sequentially selecting information corresponding to desired characters, an output plotter means for recording graphically the characters corresponding to the selected information, and translating means coupled between said source and said output plotter for converting the character information into a form usable by said plotter, said output plotter means including means for selectively controlling the horizontal and vertical positions in which said characters are recorded.

16. An automatic or semiautomatic drafting system comprising a plurality of drafting symbols stored on a plurality of storage areas, means for selecting a desired area in a selected sequence, means for blanking unwanted portions of said [?] character, means responsive to said selecting means and blanking means for applying the characters and portions thereof stored in said areas to line producing means, said line producing means having a writing element movable over the positions of a writing medium to apply said characters and portions thereof to said line producing means and means to selectively control the positions at which said characters and portions thereof are formed on said writing medium.

17. A process for automatically or semiautomatically drafting comprising the steps of storing a group of different drafting symbols so that each is selectively available, selecting said symbols in predetermined sequence, converting the form of said symbol so that it may be graphically recorded, selecting segments of predetermined symbols, and applying said converted symbols and said parts of said converted symbols to a graphical recording medium in a controlled sequence and at selectable and controllable locations thereon to produce a drawing having a desired pattern of symbols and parts thereof.

Claims 16 and 17 were rejected by the examiner under 35 U.S.C. § 112 as based on an inadequate disclosure. In addition, the examiner rejected claim 2 along with claims 16 and 17 as not complying with Patent Office Rule 75(d) on the ground that the specification does not provide any antecedent basis for apparatus to preselect the sequence of certain operations. The board affirmed these rejections, treating the latter as based on 35 U.S.C. § 112. The board also sustained the examiner's rejection of claim 2 as unpatentable under 35 U.S.C. § 103 over certain prior art references.

## OPINION

The examiner quoted language from other claims, included with the appealed claims in the rejection but since dropped by appellant, as exemplary of the terminology he considered lacking proper antecedent basis in the specification. In affirming that rejection in its original opinion, the board particularly discussed appellant's Fig. 4 embodiment, noting that entry of different characters was made manually through push buttons with the sequence of entry determined by the mind of the operator. It held that such construction did not provide certain "means" called for by the claims. As applied to the claims appealed here, it is obvious that the objections of the examiner and the board referred to such limitations as "means * * * for sequentially selecting information corresponding to desired characters" (claim 2) and "means for selecting a desired area in a selected sequence" (claim 16). On reconsideration, requested in connection with a group of claims including claim 17, the board stated that mere hand entry of symbols as disclosed by appellant does not provide automatic selection in "predetermined" and "controlled" sequence. The board also commented:

> Since appellant's Fig. 2 [which depicts a non-elected optical system] embodiment suffers the same deficiency in disclosing apparatus for automatically selecting symbols in a predetermined and controlled sequence as the Fig. 4 embodiment, we saw no need to consider in detail other than the elected species of Fig. 4. * * *.

It is apparent that the examiner and board did not regard the specification as providing an enabling disclosure of how to make the claimed system. Appellant argues the appeal on the assumption that he discloses an automatic system and process, but he offers no reason why he considers the terms "automatic" and "automatically" to be applicable to his invention. Although he concedes that "an operator has to utilize the selector just as a typewriter which has selectable keys cannot type by itself," appellant urges that his "selector" is "a means for sequentially selecting desired characters * * *." We do not agree. The act of "sequentially selecting" is not accomplished by the elements of the machine in either the Fig. 2 or Fig. 4 embodiments, but can be accomplished only by a human operator. Accordingly the "means * * * for sequentially selecting information corresponding to desired characters" in claim 2 requires a structure which is inherently operable to itself select a plurality of desired characters in sequence upon being placed in operation as distinguished from the systems disclosed here where the operator must select each individual character in sequence. See In re Sweet, 393 F.2d 837, 841, 55 CCPA 1191, 1195–1196 (1968), wherein the court stated:

> * * * We think the recitation in claim 1 of "means to simultaneously change the position of said cutting elements for cutting a different size diameter" requires a structure which is itself inherently operable to carry out the adjustment of both elements "simultaneously," as distinguished from structure characterized merely in that a *plurality* of means can be adjusted simultaneously by an operator.

The corresponding recitation of "means for selecting a desired area in a selected sequence" in claim 16 is subject to the same objections, and both claims 2 and 16, therefore, are not supported by the application disclosure which is insufficient to enable a person skilled in the art to make a system comprising the means in question. Since the specification fails to disclose, with respect to either Fig. 2 or Fig. 4, elements which perform as discussed above, it also fails to adequately disclose an "automatic" system.[2]

2. Webster's New International Dictionary, 2d ed. 1939, defines "automatic" as
    2. Mach. Having a self-acting or self-regulating mechanism that performs a required act in an operation,—said esp. of machinery or devices which perform work formerly or usually done by hand; as the *automatic* feed of a lathe.

Since claim 17 is a process claim, it would not lack sufficient support merely because no self-acting means for selecting symbols in predetermined sequence is disclosed. However, the designation of the process as one for "automatically" or "semi-automatically" drafting does impute to the process more than just selection of each character in turn by the human mind and hand. No apparatus capable of automatically performing the process being disclosed, it must be held that the application also lacks an adequate disclosure of the subject matter of that claim.

The rejection designated by the examiner as under 35 U.S.C. § 112 relates to inadequacy of the application as a disclosure of apparatus to perform in the manner attributed to it, in a nonautomatic manner, and is *in addition to* the inadequacy as regards the "automatic" type of claim limitation already found. The examiner emphasized the electronic embodiment of Fig. 4, asserting that the pulse blanking oscillator, translator and plotting board, and the operative interconnections between them, shown in the drawings in block diagrams and described in the specification as "well known" or merely named, were not disclosed adequately to enable a person skilled in the art to practice the invention.

Appellant submitted an affidavit of a development engineer, accompanied by certain extracts from technical publications, to rebut the examiner's position. Those extracts describe apparatus using electronic circuits to produce different displays, such as on cathode ray tubes and an x-y coordinate waveform plotter, as well as a general type of electronic blanking circuit. However, it is not made clear that a person skilled in the art would know which, or what parts, of these circuits could be used to construct appellant's device or how they could be interconnected to act in coordination to produce the required results. In fact, it does not appear that the descriptions in the extracts would themselves meet the disclosure requirements of § 112. The affiant does attempt to describe how a simple pre-school child's drawing of a house would be made with the invention, but that description answers none of the questions as to the nature of the elements and their operative relationships. The disclosure of the Fig. 4 embodiment is thus inadequate for the additional reasons given by the examiner.

Appellant attempts to raise the issue whether a rejection of "generic claims [here, 2 and 17]" is proper under § 112 where the claims are supported by a "non-elected embodiment [here Fig. 2]" (bracketed insertions appellant's in both cases) if the disclosure of the elected species is inadequate. No such issue exists since the disclosure, including Fig. 2, fails to support the three appealed claims for the reasons already discussed.

In view of our affirmance of the board's decision sustaining the rejection of claims 2, 16 and 17 under 35 U.S.C. § 112, it is unnecessary to consider the additional rejection of claim 2 under 35 U.S.C. § 103. The decision of the board is affirmed.

*Affirmed.*