Application of SIMULATIONS PUBLICATIONS, INC.

Patent Appeal No. 75–568.

United States Court of Customs and Patent Appeals.

Sept. 11, 1975.

Rich, J., filed a dissenting opinion.

Stephen B. Patrick, Newfield, N. J., Horn, Weinstein & Kaplan, Atlantic City, N. J., attys. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Henry W. Tarring II, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

## DECISION

This appeal is from the decision of the Trademark Trial and Appeal Board, affirming the examiner's ex parte refusal to register the mark reproduced below (Serial No. 430,382 filed July 20, 1972) as a trademark for a magazine, use since June 1968 being asserted. We affirm.

## OPINION

The issue presented in this appeal is whether the Trademark Trial and Appeal Board was correct in sustaining the examiner's refusal to register appellant's stylized mark "Strategy & Tactics," for a magazine, on the ground that it so resembles the mark "TACTICS," also

stylized, registered on the Principal Register for a "monthly magazine," as to be likely, when applied to the goods of the appellant, to cause confusion, or to cause mistake or to deceive. 15 U.S.C. § 1052(d).

Appellant raises two issues: whether the board erroneously relied on the similarity in the different dictionary definitions of the terms "strategy" and "tactics"; and whether the board erroneously limited its consideration to the words of the respective marks.

■■ Both the examiner and the board recognized that the words "strategy" and "tactics" do not have the identical meaning, but do have similar connotations and are closely related in meaning. We agree with appellant that the examiner and the board properly referred to a standard dictionary to determine the *ordinary* significance and meaning of the words in issue. *Hancock v. American Steel & Wire Co.*, 203 F.2d 737, 40 CCPA 931 (1953). Appellant appears to take the position that the words must be synonyms in order to support the board's finding of likelihood of confusion. We do not agree. We are primarily concerned with the meaning of the marks to members of the public at large who are prospective purchasers of magazines, and not to military experts. In view of this, we think that the board properly considered the similarity in the meaning of the terms "strategy" and "tactics," notwithstanding that there is a distinction between the technical meanings of the two terms.

■ We also do not agree with appellant's contention that the board erroneously limited its consideration to the words of the respective marks. Appellant urges that both its magazine and the reference magazine are essentially sold by direct mail subscription, and that neither is sold on newsstands. Appellant further urges that the magazines deal with unrelated subject matter. Statements in a brief cannot take the place of evidence. See *In re Scarbrough*, 500 F.2d 560 (CCPA 1974). There is no evidence of record showing how appellant's magazine or the reference magazine is sold. Although a footnote in the board's opinion describes the contents of copies of the two magazines, these copies have not been made part of the record in the present appeal. Accordingly, there is no evidence before this court to support appellant's arguments regarding these alleged differences between the two magazines.

■■ This case turns on whether or not purchasers might reasonably be likely to believe that goods for which appellant seeks registration emanate from the reference registrant. The goods for which appellant seeks registration are described in appellant's trademark application as a "magazine." The goods for which the reference registrant has obtained registration on the Principal Register are specified in the registration certificate as a "monthly magazine." Appellant has not attempted to limit its description of its magazine to any particular subject matter. Confusing similarity is determined on the basis of goods as defined in the application. Any differences between the contents of the magazines of appellant and of the registrant are subject to change without notice to the Patent and Trademark Office. Cf. *Meyer Chemical Co. v. Anahist Co.*, 263 F.2d 344, 46 CCPA 784 (1959). In our view, the term "magazine" is broad enough to reasonably include monthly magazines for which the reference registrant has a prima facie right of exclusive use of its mark. 15 U.S.C. § 1057(b). In view of this, we think that the contemporaneous use of appellant's mark and the reference mark for the names of magazines is likely to result in confusion regarding the source of the goods.

The dissent attempts to establish magazine titles as a special class of goods. We perceive no more reason to establish magazine titles as *sui generis* than light bulbs. Magazine titles like trademarks for light bulbs are what the purchaser relies upon to get him the content or product he has found satisfactory in the past. Magazine titles are not different than trademarks for other products.

The decision of the Trademark Trial and Appeal Board is *affirmed.*

*Affirmed.*

RICH, Judge (dissenting).

I would reverse the decision of the Trademark Trial and Appeal Board (TTAB) affirming the examiner's ex parte refusal to register appellant's mark because I see no likelihood of confusion, mistake, or deception within the meaning of § 2(d), 15 U.S.C. § 1052(d).

What we are dealing with here are magazine titles which, realistically, are in a somewhat different category from marks used on the usual run of manufactured products. I am aware that we said that "titles of publications must not be considered any differently than trademarks for other products" in *Jenkins Publishing Co. v. Metalworking Publishing Co.,* 315 F.2d 955, 50 CCPA 1218 (1963), citing two earlier cases under the 1905 Trademark Act in each of which the court had made the self-evident statement that periodical publication titles must be tested as to registrability *by the same statutes and rules* as marks for other merchandise. Taking the statement in *Jenkins* in the light of what was said in the precedents on which it was based, there is nothing in the statement which is contrary to the assertion that the title of a periodical publication such as a magazine is a somewhat different animal from a trademark for, say, an electric light bulb. In the latter case a purchaser may care a lot who made the bulb—what its source is, or who is behind it, as a guaranty of quality. In the case of a magazine, its title functions much more as the name of the thing, the handle by which the purchaser gets *what* he wants, rather than as a symbol by which he obtains assurance as to source or sponsorship or expected quality. I doubt that purchasers of two magazines in the same field normally have any interest in whether they are published by the same or different publishers. Magazines are bought for their expected contents and their titles are the means by which the desired contents are obtained; just as one goes out to buy soap or gasoline or candy, one steps up to the magazine rack to select the Atlantic Monthly or Popular Mechanics or Playboy. Furthermore, in one way or another, periodical titles, even though registrable as trademarks, have a way of strongly suggesting their contents. The majority implies that periodical publications are no different from other merchandise but is unable to cite anything quite like them.

Since magazine purchasers are used to the idea that there is more than one magazine in the same field, perforce containing similar contents—such as Photography, Popular Photography, and Modern Photography; or Popular Mechanics, Mechanics Illustrated, and Popular Science; or True, True Story, True Secrets, True Experience, True Romance, and True Detective; or Scientific American and American Scientist; or Women's Circle, Lady's Circle, and Family Circle; or House Beautiful and House & Garden; or American Home and Better Homes and Gardens; all titles of which I take judicial notice from having casually perused a couple of magazine racks available to the general public—magazine purchasers have a degree of sophistication or selection know-how which does not necessarily exist in the purchase of a can of beans or paint. They *normally* discriminate. Trademarks for magazines and for other periodicals do have some similarities to other trademarks, but there are nevertheless differences which must be taken into account.

Our statement in *Jenkins,* quoted above, is much too broad in saying that periodical publication titles must not be "considered differently" from trademarks for other products. We do not even consider *all* trademarks on such other products in the same way. We take all marketplace factors into consideration and we do not and never have treated trademarks for car polish and soap and similar off-the-shelf items as we treat marks for highly technical, engineer-purchased equipment costing $1,000 or more. While we do, as we must, consider all marks under the same

statutes and rules, we always consider different situations resulting from different categories of goods "differently." See *In re E. I. Du Pont De Nemours & Co.*, 476 F.2d 1357 (CCPA 1973). Magazine titles certainly pertain to a special class of goods.

The two marks with which we are here concerned are:

Appellant's Magazine Title

The Reference Magazine Title

TACTICS

Not only words are involved, but design as well. As magazine titles the two marks are highly distinctive in the sense of being easily distinguished. Of course the *goods* must be regarded as legally identical—both being magazines—but there is no parallel to be drawn here with a can of beans; the purchaser is not looking for just a magazine but for a particular magazine. He knows what he wants and he will have no trouble at all distinguishing one from the other by looking at the above marks. Even if we ignore the prominent design differences, as for example in ordering the magazine over the phone or by mail or calling for it in a library, there will be no difficulty in identification since the titles are distinctly different.

I can see no likelihood of confusion. I will not attempt to point out in detail where the majority opinion goes wrong otherwise than as I already have. Most of its discussion seems to me to be on matters which are beside the point, such

as the discussion of the meanings of the words involved. I fully agree with the board in its finding *as fact* that

* * * when the marks here involved are considered in their entireties they differ in both overall sound and appearance * * * purchasers would not be likely to mistakenly purchase one magazine for the other * * *.

But it went further and opined that the two marks "convey substantially the identical commercial impression." Frankly, I don't know what the board could have meant by that. I think the statement has no meaning in light of the board's finding that "purchasers would not be likely to mistakenly purchase one magazine for the other." That *impression*, the board said, would be enough to create a likelihood of confusion as to source. As above indicated, I think such confusion—as to source of publication—is here not a controlling consideration because the purchaser is not buying electric light bulbs or beans or a product as to which source is of any moment to him. He is after a particular literary content, a particular magazine. If people do not confuse the goods to which the marks are attached, how can there be "likelihood of confusion" resulting from that concurrent use under § 2(d)?

The majority emphasizes that there is no evidence in this case. True, appellant did not introduce evidence after filing the application, except for an affidavit of use. But *the board found some evidence* by which it was somewhat influenced. It apparently examined the magazines of appellant and of the registrant, from which I deduce that they are on file in the Patent and Trademark Office as specimens. On the basis of that evidence the TTAB was able to say that "the contents of the magazines are specifically different." Appellant argues this point and I think it is not to be ignored. It is further evidence that confusion is not likely. The board found *as fact* "that applicant's publication deals with military history and war games while the magazine of the registration is

oriented to psychological warfare." I do not see why we should not accept this fact finding even though the magazines are not in the record before us. *Appellant* had no reason to put them in the record; the board's finding is in its favor. The fact finding has not been contested by the Solicitor. It is only the majority that objects that the magazines are not before us. I see no need for them in accepting an undisputed fact finding of the lower tribunal. In any event, the marks themselves are the best evidence. I therefore disagree with the statement that there is no evidence in this case.