**THIS OPINION IS A PRECEDENT OF THE TTAB**

Mailed:
July 11, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Jackson International Trading Co.
Kurt D. Bruhl GmbH & Co. KG
_____

Serial No. 77600412
_____

Ursula B. Day, Esq. for Jackson International Trading Co.
Kurt D. Bruhl GmbH & Co. KG

Linda M. King, Trademark Examining Attorney, Law Office 116
(Michael W. Baird, Managing Attorney).
_____

Before Cataldo, Mermelstein and Bergsman,
Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Jackson International Trading Co. Kurt D. Bruhl GmbH & Co. KG ("applicant") filed an application to register the mark BENNY GOODMAN COLLECTION THE FINEST QUALITY (stylized), shown below, for fragrances and cosmetics, in Class 3, leather goods, in Class 18, and clothing, in Class 25.

Serial No. 77600412

Applicant disclaimed the exclusive right to use the word "Collection" and the phrase "The Finest Quality." As part of the application, applicant stated that "'Benny Goodman' does not identify a living individual."

The Trademark Examining Attorney refused registration under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. § 1052(a), on the ground that the mark falsely suggests a connection with the musician Benny Goodman who "had a very long and successful career as a musician and bandleader, with a reputation that continues to this day."[1] Furthermore, the examining attorney asserted that "the Estate of Benny Goodman continues to protect his intellectual property rights."[2] The Examining Attorney submitted the following evidence to support the refusal:

1. *Benny Goodman: The Official Website of the King of Swing* (bennygoodman.com) provides the following information:

> Business
>
> Overview
>
> CMG Worldwide is the exclusive business representative for the Estate of Benny Goodman. We work with companies around the world who wish to use the name or likeness of Benny Goodman in any commercial fashion. The words and the

---

[1] May 13, 2010 Office action.
[2] *Id.*

2

signature "Benny Goodman" are trademarks owned and protected by the Estate of Benny Goodman. In addition, the image, name and voice of Benny Goodman is [sic] a protectable property right owned by the Estate of Benny Goodman. Any use of the above, without the express written consent of the Estate, is strictly prohibited.[3]

2. A search for "Benny Goodman" in the *Answers.com* search engine produced excerpts from sources such as the Britannica Concise Encyclopedia, Music Encyclopedia, U.S. History Companion, Columbia Encyclopedia, the Fine Arts Dictionary, and Filmography.[4] Benny Goodman was a famous jazz clarinetist, composer and bandleader. He is known as "The King of Swing," "The Professor," "Patriarch of the Clarinet," and "Swing's Senior Statesman."

3. Excerpts from the *Last.fm, Amazon.com,* and *Borders.com* websites advertising the sales of Benny Goodman recordings.[5]

Section 2(a) of the Trademark Act of 1946, 15 U.S.C. §1052(a), provides, in relevant part, that "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it –

---

[3] *Id.*
[4] *Id.*
[5] January 6, 2011 Office action.

(a) consists of or comprises . . . matter which may . . . falsely suggest a connection with persons living or dead."

Following our principal reviewing court's decision in *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), *aff'g* 213 USPQ 594 (TTAB 1982), the Board utilizes the following four-part test to determine whether a false suggestion of a connection has been established:

1. The mark is the same as, or a close approximation of, the name of or identity previously used by another person;

2. The mark would be recognized as such because it points uniquely and unmistakably to that person;

3. The person named by the mark is not connected with the activities performed by the applicant under the mark; and,

4. The prior user's name or identity is of sufficient fame or reputation that a connection with such person would be presumed when applicant's mark is used on applicant's goods.

*See also In re MC MC S.r.l.,* 88 USPQ2d 1378, 1379 (TTAB 2008); *In re White,* 80 USPQ2d 1654, 1658 (TTAB 2006); *In re Wielinski,* 49 USPQ2d 1754, 1757 (TTAB 1998); *In re Sloppy Joe's Int'l Inc.,* 43 USPQ2d 1350, 1353 (TTAB 1997).

A.  Whether applicant's mark is a close approximation of the name Benny Goodman?

As indicated above, applicant is seeking to register the mark BENNY GOODMAN COLLECTION THE FINEST QUALITY

(stylized) and the Examining Attorney asserts that the mark is a close approximation of the name "Benny Goodman." We find that the commercial impression engendered by applicant's mark is that there is a "Benny Goodman" collection of products which makes applicant's mark a close approximation of the name Benny Goodman. Moreover, applicant effectively concedes this point by not arguing that its mark is not a close approximation of the name "Benny Goodman."

B.   Whether applicant's mark points uniquely and unmistakably to Benny Goodman?

The requirement that applicant's mark point uniquely and unmistakably to Benny Goodman, the bandleader, composer and clarinetist, does not mean that Benny Goodman must be a unique name. Rather, in the context of applicant's fragrances and cosmetics, leather goods and clothing, we must determine whether consumers would view the mark as pointing only to Benny Goodman, the bandleader, composer, and clarinetist, or whether they would perceive the name "Benny Goodman" as having a different meaning. *See Hornby v. TJX Companies Inc.,* 87 USPQ2d 1411, 1426 (TTAB 2008). In this regard, we note that it is commonplace for performers and owners of well-known marks to expand their product lines to incorporate a diverse set of goods to

5

capitalize on the renown of their names and brands. *Cf. In re Phillips-Van Heusen Corp.*, 228 USPQ 949, 951 (TTAB 1986) ("The licensing of commercial trademarks for use on 'collateral' products (such as clothing, glassware, linens, etc.) which are unrelated in nature to those goods or services on which the marks are normally used, has become a common practice in recent years."); *General Mills Fun Group, Inc. v. Tuxedo Monopoly, Inc.,* 204 USPQ 396, 400 (TTAB 1979) ("Moreover, it is a matter of common knowledge that famous marks are frequently used on certain types of items, such as clothing, glassware, trash cans, pillows, etc., which are unrelated in nature to those goods on which the marks are normally used; such use has become a part of everyday life which we cannot ignore."), *aff'd* 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981) (finding no error in the Board's finding that it is common knowledge that famous marks are frequently used on diverse and "novelty" items). *See also Source Services Corporation v. Chicagoland JobSource, Inc.,* 643 F.Supp. 1523, 1 USPQ2d 1048, 1052 (N.D. Ill. 1986) ("As product lines become increasingly diversified, and as 'labels' having sales prestige of their own are affixed to products as diverse as clothes and cigarettes, the significance of product *dissimilarity* have become attenuated.") (Emphasis in the original).

Accordingly, we find that consumers encountering applicant's mark used in connection with fragrances and cosmetics, leather goods and clothing will associate the name "Benny Goodman" with the well-known bandleader, composer and clarinetist.

Applicant argues that "Benny Goodman is or was well known only in connection with music among those that are over the age of 30. Ask anyone aged 40 or under and they do not know the person, the musician. In fact, the name Benny Goodman is not at all unique as is easily seen when consulting the facebook [sic] pages. Benny Goodmans galore!"[6] However, applicant did not make of record any of the asserted Benny Goodman FACEBOOK pages; nor did applicant introduce any evidence supporting its argument that few people under the age of 30 or 40 can identify Benny Goodman the musician. Assertions in briefs are not evidence. *In re Simulations Publications, Inc.,* 521 F.2d 797, 187 USPQ 147, 148 (CCPA 1975); *In re Vesoyuzny Ordena Trudovogo Krasnogo Znameni*, 219 USPQ 69, 70 (TTAB 1983). *See also Spin Physics, Inc. v. Matsushita Electric Co.,* 168 USPQ 605, 607 (TTAB 1970) (the arguments and opinion of counsel are insufficient to overcome the facts). *See also*

---

[6] Applicant's Brief, p. 4.

*In re Sauer,* 27 USPQ2d 1073, 1074 n.1 (TTAB 1993) ("Applicant's assertion that she took an informal survey as to how the mark is perceived is without evidentiary support."). If applicant wished to show that there are numerous individuals known as Benny Goodman, or that the renown of Benny Goodman, the bandleader, composer and clarinetist, has faded to the point that the applied for mark does not point uniquely and unmistakably to him, then applicant was obligated to introduce such evidence to rebut the evidence submitted by the examining attorney.

C.   <u>Whether Benny Goodman is connected with applicant's fragrances and cosmetics, leather goods, and clothing</u>?

There is no evidence in the record that Benny Goodman, the bandleader, composer and clarinetist, has any connection with applicant's business.

D.   <u>Whether Benny Goodman's name or reputation is sufficiently famous that a connection with Benny Goodman would be presumed when applicant's mark is used on applicant's goods</u>?

The evidence noted above is sufficient to show that the name Benny Goodman has fame or renown today such that the use of that name as a trademark by an unauthorized user will falsely suggest a connection with Benny Goodman, the bandleader, composer and clarinetist. Applicant contends

that "music lovers of today especially those under 30 will not recognize the name as that of a famous musician."[7]

We recognize that the fame and renown of a celebrity may recede after the celebrity's death. However, because of his great celebrity in the entertainment field, Benny Goodman remains a well-known figure among a sufficient segment of the population as to support finding a false suggestion of a connection.[8] *See Hornby v. TJX Companies Inc.,* 87 USPQ2d at 1426. In this regard, "[m]any of [Benny Goodman's] recordings have been newly issued by Sunbeam, a label devoted largely to aspects of his work,"[9] and Benny Goodman's recordings are offered for sale on the LAST.fm, Amazon.com, Borders.com websites.[10]

In opposition to the examining attorney's evidence and argument that the mark falsely suggests a connection with Benny Goodman, the composer, bandleader, and clarinetist, applicant asserts that the facts in this application are similar to the facts in *In re MC MC S.r.l.,* where "the

---

[7] Applicant's Brief, p. 3.
[8] Although applicant argues that younger people would not know of Benny Goodman the bandleader, applicant apparently does not dispute that a substantial segment of the population — those over 30 or 40 — would be aware of him. Thus even if applicant had proved its assertion that younger people were unaware of the historical Benny Goodman, we would still affirm the refusal to register.
[9] *Jazz: A Film by Ken Burns* (PBS.org) attached to the January 6, 2011 Office action.
[10] January 6, 2011 Office action.

Board found for applicant as the institution that represented [Maria Callas'] interests supposedly agreed that the applicant could use the name 'Maria Callas' for jewelry, although no documents were on file to support such an assertion."[11]  In the *MC MC S.r.l.* case, the Section 2(a) false association refusal was reversed because there was no evidence that any entity with rights in the deceased singer's name existed.  *In re MC MC S.r.l.,* 88 USPQ2d at 1380.  In that case, applicant had argued that there was no estate vested with the rights to control the use of the name Maria Callas or her persona.  Specifically, applicant had argued that "because the cumulative evidence of record establishes that the rights of privacy and publicity in the name 'Maria Callas' have extinguished with the death of the opera singer in 1977 and her legal heirs thereafter," there was no cognizable right of privacy or publicity to be protected.  88 USPQ2d at 1379.  However, in the application currently before the Board, the record shows that CMG Worldwide holds itself out as the exclusive business representative for the estate of Benny Goodman and the sole entity designated with the legal authority from his estate to grant permission to use his name.

---

[11] Applicant's Brief, p. 5.

Moreover, applicant itself has acknowledged that it is aware that there are heirs asserting rights in the name and persona of Benny Goodman, the bandleader, composer, and clarinetist. Applicant asserts that "[i]n the 1990s applicant's attorneys at the time had been briefly in contact with a representative of the heirs"[12] and that "there was a tacit agreement by whoever was in contact years ago …"[13] Accordingly, applicant knew that there were people claiming to be heirs of Benny Goodman. Suffice it to say, there is no reasonable basis for applicant to contend that a Section 2(a) false suggestion of a connection refusal does not apply because Benny Goodman has no heirs.

In view of the facts that applicant's mark is a close approximation of the name of the musician Benny Goodman, that applicant's mark points uniquely and unmistakably to him, that Benny Goodman has no connection with applicant's business, and Benny Goodman is sufficiently famous that a connection with him (or his estate) would be presumed if applicant's mark were used in connection with fragrances and cosmetics, leather goods, and clothing, we find that

---

[12] Applicant's Brief, p. 4.
[13] Applicant's Brief, p. 5.

Serial No. 77600412

applicant's mark falsely suggests a connection with Benny

Goodman.

      **Decision**:  The refusal to register is affirmed.