THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing:
October 30, 2013

Mailed:
March 7, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re U.S. Tsubaki, Inc.*

———

Serial No. 85267349

———

James C. Wray, Esq. for U.S. Tsubaki, Inc.

Michele-Lynn Swain, Trademark Examining Attorney, Law Office 116 (Michael W. Baird, Managing Attorney).

———

Before Rogers, Kuhlke and Bergsman, Administrative Trademark Judges.[1]

Opinion by Bergsman, Administrative Trademark Judge:

U.S. Tsubaki, Inc. ("applicant") filed a use-based application to register the mark TSUBAKI: THE CHOICE FOR CHAIN, in standard character form, for "industrial machine parts, namely, chains and sprockets," in Class 7.[2]

---

[1] Judge Grendel sat on the panel at the oral argument. He has since retired, and Judge Rogers has been substituted for him on this decision. The change in composition of the panel does not necessitate a rehearing of the oral argument. *Hunt Control Systems Inc. v. Koninklijke Philips Electronics N.V.*, 98 USPQ2d 1558, 1560 (TTAB 2011). *See also In re Bose,* 772 F.2d 866, 227 USPQ 1, 4 (Fed. Cir. 1985).

[2] Applicant disclaimed the exclusive right to use the word "Chain" and stated that the English translation of "Tsubaki" is "camellia."

The Trademark Examining Attorney has refused registration pursuant to Sections 1 and 45 of the Trademark Act of 1946, 15 U.S.C. §§ 1051 and 1127, on the ground that applicant failed to submit a specimen showing proper trademark use. The Trademark Examining Attorney contends that the specimens of use submitted by applicant are not acceptable to show use of the mark in connection with the goods because they are merely advertising material.

Section 45 of the Trademark Act states that a mark is deemed to be in use in commerce

> (1)      on goods when—
>
> (A)      it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B)      the goods are sold or transported in commerce.[3]

Trademark Rule 2.56(b)(1), 37 C.F.R. § 2.56(b)(1) provides:

> A trademark specimen is a label, tag, or container for the goods, or a display associated with the goods. The Office may accept another document related to the goods or the sale of the goods when it is impracticable to place the mark on the goods or packaging for the goods.

*See also In re Sones*, 590 F.3d 1282, 93 USPQ2d 1118, 1123 (Fed. Cir. 2009) ("the test for an acceptable … specimen, is simply that it must in some way evince that the mark is 'associated' with the goods and serves as an indicator of source"); and *In re Marriott*, 459 F.2d 525, 173 USPQ 799 (CCPA 1972). Thus, something other than

---

[3] While section 45 specifically provides that use of a mark on advertising qualifies as "use in commerce" for a service mark, it omits use on advertising under the provision for marks used on goods, *i.e.*, trademarks.

a label, tag, container, or display associated with the goods is acceptable only upon a showing that it is "impracticable to place the mark on the goods or packaging for the goods." The TMEP explains further that a qualifying "display" will essentially comprise "point-of-sale material such as banners, shelf-talkers, window displays, menus, and similar devices." TMEP § 904.03(g). Consistent with Section 45 of the Trademark Act, this TMEP section goes on to explain that "[f]olders, brochures, or other materials that describe goods and their characteristics or serve as *advertising* literature are not per se 'displays'" and that "[i]n order to rely on such materials as specimens, an applicant must submit evidence of point-of-sale presentation." (emphasis added). The TMEP also explains that "[i]n appropriate cases, catalogs are acceptable specimens of trademark use," but again qualifies this provision by noting that catalogs that do not "(1) include[] a picture or a sufficient textual description of the relevant goods; (2) show[] the mark in association with the goods; and (3) include[] the information necessary to order the goods" may constitute "mere advertising" material and thus not qualify. TMEP § 904.03(h) (October 2013). "[T]he mere inclusion of a phone number, Internet address and/or mailing address on an advertisement describing the product is not in itself sufficient to meet the criteria for a display associated with the goods. There must be an offer to accept orders or instructions on how to place an order." *Id.*[4] *See also In re MediaShare Corp.,* 43 USPQ2d 1304, 1306 (TTAB 1997) (fact sheets, catalogs, or brochures

---

[4] Contrary to applicant's argument at the oral hearing, the TMEP does not advise that merely providing contact information, such as a telephone number, is sufficient to transform advertising into a display associated with the goods.

submitted as specimens were not displays associated with the goods, in part, because they did not include any information as to how to order the products or the terms and conditions under which the software was available for license).

Applicant asserts that the specimens of record "are catalogs that offer the Applicant's products to customers by inviting orders using the telephone number show [sic] in the catalog. Thus, as required by TMEP §904.03(h) (October 2013), the provided specimens offer to accept orders and provide instructions on how to place an order."[5] The Examining Attorney takes the position that the catalogs do not contain the necessary ordering information for the goods and therefore are mere advertising.[6]

Our primary reviewing court has instructed that the Trademark Act "specifies no particular requirements to demonstrate source or origin; for displays, the mark must simply be 'associated' with the goods." *Sones*, 93 USPQ2d at 1122, *citing In re Marriott*, 459 F.2d 525, 173 USPQ 799 (CCPA 1972). However, the court, in the context of reviewing a Board determination that a webpage specimen did not qualify as a display associated with goods, also stated that a relevant consideration was whether the webpage specimen had "a 'point of sale nature.'" *Sones*, 93 USPQ2d at 1124 (*citing Lands' End Inc. v. Manbeck*, 797 F. Supp. 511, 24 USPQ2d 1314, 1316 (E.D. Va. 1992)). The determination of whether a proffered catalog specimen is merely advertising or serves the function of a display associated with the goods is a question of fact. *In re Shipley Co.,* 230 USPQ 691, 694 (TTAB

---

[5] Applicant's Brief, pp. 1-2.

[6] Trademark Examining Attorney Brief, unnumbered pages 4-5.

1986). A display used in association with the goods is essentially a point-of-sale display designed to catch the attention of purchasers as an inducement to consummate a sale. *Id*. at 694 ("A crucial factor in the analysis is if the use of an alleged mark is at a point of sale location"). "Factually, we need to ask whether the purported point-of-sale display provides the potential purchaser with the information normally associated with ordering products of that kind." *In re Anpath Group Inc.,* 95 USPQ2d 1377, 1381 (TTAB 2010).

In order to determine whether applicant or the Trademark Examining Attorney is correct, we must turn to a consideration of the specimens. Applicant submitted six (6) specimens with its application. We discuss each specimen below.

A.    First specimen

The first specimen is an eight-page catalog or advertising brochure with the title "There's Nothing Standard about Tsubaki Performance." The mark appears on the lower right-hand corner of the first page. On page seven, applicant presents the information set forth below.



# A Winning Combination Tsubaki Attachment Chains

For industry-leading quality, service, and support, there's no stopping U.S. Tsubaki. That's because we keep improving on #1!

- Our premium-quality base chains are designed to consistently exceed industry standards.
- We keep thousands of standard attachments in stock so you can get the product you need quickly.
- Have a specialized or custom application? Bring it to us and let our technical experts design the made-to-order attachment solution to meet your specific needs.
- Need attachment chains? Contact our professional customer service team to get answers to questions and fast quotes. Your business is our #1 priority.

**Get the right chain, right away!**

Simply choose the base chain that works best in your environment, and then specify the type of attachment and spacing. One call to Tsubaki gets the process going, and we're here to help every step of the way.

| Select this chain | For this condition/application |
|---|---|
| Carbon Steel | Standard applications |
| Nickel-Plated | Mildly corrosive environments |
| Stainless Steel | Corrosive environments, including food-grade applications |
| NEPTUNE® | Mild washdown conditions and harsh outdoor environments |
| LAMBDA® | When lubrication is difficult or impossible |

The fourth bullet on the left-hand side reads as follows:

> Need attachment chains? Contact our professional customer service team to get answers to questions and fast quotes. Your business is our #1 priority.

On the right-hand side, the text reads as follows:

> Get the right chain, right away!

> Simply choose the chain that works best in your environment, and then specify the type of attachment and spacing. One call to Tsubaki gets the process going and we're here to help every step of the way.

Applicant's contact information appears on the bottom of page eight as shown below.

Applicant argues that page seven "invites the customer to contact the Applicant's customer service team to answer any questions or to get quotes for placing orders. On the next page of the same specimen, the catalog lists the telephone numbers for the customer to use to place an order."[7]

A simple invitation to call applicant to get information – even to get quotes for placing orders – does not provide a means of ordering the product. As the Board held in *Anpath*, "[o]ur hypothetical, potential customer, after reviewing applicant's specimen with its limited ordering information, is simply not yet at the point of purchase, and would contact applicant to obtain preliminary information necessary to order the goods; it is only after obtaining such information, which is not provided on the specimen, that the purchaser could actually place an order with applicant's sales office." *In re Anpath Group Inc.,* 95 USPQ2d at 1381. *Compare Land's End,* 24 USPQ2d at 1316, in which the Court found catalog specimens to be acceptable displays associated with the goods because "a customer can identify a listing and make a decision to purchase by filling out the sales form and sending it in or by calling in a purchase by phone."

---

[7] Applicant's Brief, p. 3.

In *Anpath,* the Board focused on "whether the purported point-of-sale display provides the potential purchaser with the information normally associated with ordering products of that kind":

> Turning then to applicant's substitute flyer, a generous portion of the text is devoted to touting the benefits of these goods. What is missing is a sales form, or ordering information anywhere on the specimen. In point of fact, the potential purchaser has no actual information about the minimum quantities of applicant's goods one may order, how much the goods cost, how one might pay for the products, how the large containers of liquid would be shipped, etc.

95 USPQ2d at 1381.

Likewise, in this case, applicant's specimen indicating how one can obtain more information regarding chains and sprockets is simply promotional material. It does not provide a sales form or ordering information. There is no information about minimum quantities one must order, how much the goods cost, or how the orders are shipped. Such advertising is not acceptable to show trademark use on goods. *See* Section 45 of the Trademark Act; *In re Anpath Group Inc.,* 95 USPQ2d at 1381; *In re MediaShare Corp.*, 43 USPQ2d at 1307. Similarly, the company name, address and phone number that appear on the last page of the catalog indicate only location information about applicant; it does not constitute a means to order goods through the mail or by telephone, in the way that a catalog sales form provides a means for one to fill out a sales form or call in a purchase by phone. *Compare In re Valenite Inc.,* 84 USPQ2d 1346, 1348-49 (TTAB 2007), in which, in addition, Valenite's director of marketing stated in his declaration that "these [toll-free] numbers are now, and … have been, used to place orders for the goods" and

the specialized industrial nature of applicant's goods was supported by applicant's webpage specimen corroborating applicant's argument that "[s]election and ordering of VALPRO systems and components requires careful calculation and technical knowledge." The Board in *Valenite* also noted that the examining attorney did not dispute this point. *Id.* at 1349. However, in this case, the Examining Attorney has disputed the commercial impression engendered by the display of applicant's contact information:

> In the case at hand, the provided specimens do not indicate to consumers that they can place orders for the identified goods via the provided contact information. Accordingly, because the provided specimens do not contain instructions to consumers as to how to place an order using the provided contact information, such specimens are mere advertising material.[8]

The specimen at issue does not contain any information normally associated with ordering products via the telephone or the Internet. There are no sales forms, no pricing information, no offers to accept orders, and no special instructions for placing orders anywhere on the specimen. There are no instructions regarding what information the caller needs to have available to help applicant process an order. Applicant is asking us to infer from the face of the specimen that it is common for customers to purchase applicant's chain through the telephone or through the Internet.

We acknowledge the explanation by applicant's counsel that "[o]rders are taken over the telephone by skilled chain experts in U.S. Tsubaki, Inc. Customers

---

[8] December 7, 2011 Office action. *See also* the Trademark Examining Attorney's Brief, pp. 4-5 (unnumbered).

9

initiate telephone calls to the telephone number on the catalog and order the products by telephone."[9] Thus, applicant concludes that "[t]he specimen includes the information necessary to order the goods (e.g., the telephone number) for placing orders."[10] Further, applicant argues that the "internet address provides a website that also contains information for requesting quotations on specific chains."[11] However, neither the ability to request a quotation via the internet or by phone evidences that the specimen constitutes a point of sale display. Utilization of either requires taking additional steps to consummate a sale.

Moreover, there is no actual proof to support these statements in the record. We have only applicant's counsel's statements as to how applicant and its competitors sell chains and sprockets. Putting aside whether a declaration from outside counsel could ever qualify as acceptable proof of these sort of facts,[12] we have here no foundational information about counsel's investigation of, or understanding of, applicant's business, that would put him in a position to make statements regarding the marketing of the products at issue, which in this case is essential to our analysis of the registrability of the mark. *Cf. In re Simulations Publications, Inc.,* 521 F.2d 797, 187 USPQ 147, 148 (CCPA 1975) (where appellant

---

[9] Applicant's June 6, 2012 response to Office action. *See also* Applicant's October 3, 2011 response to Office action.

[10] Applicant's June 6, 2012 response to Office action.

[11] *Id.*

[12] *Cf. In re DeBaun,* 687 F.2d 459, 214 USPQ 933, 934 & n.4 (CCPA 1982) ("we need not evaluate the weight to be given to the attorney's declaration with respect to statements more appropriately made by appellant"); *In re Nat'l Distiller & Chem. Corp.,* 297 F.2d 941, 132 USPQ 271, 274 (CCPA 1962).

argued that the magazines at issue deal with unrelated subject matter, the court held that "[s]tatements in a brief cannot take the place of evidence."); *In re Scarbrough,* 500 F.2d 560, 182 USPQ 298, 302 (CCPA 1974) (where patent claims were rejected for the insufficiency of disclosure under Section 112, the response of appellant was argument in lieu of evidence leading the court to hold that "argument of counsel cannot take the place of evidence lacking in the record."); *In re Vsesoyuzny Ordena Trudovogo Krasnogo Znameni,* 219 USPQ 69, 70 (TTAB 1983) (applicant argued without corroborating evidence that its brochure would be recognized as an offer of services leading the Board to hold that "[u]nfortunately we have no evidence of record to this effect and assertions in briefs are normally not recognized as evidence"); *Spin Physics, Inc. v. Matsushita Electric Industrial Co., Ltd.,* 168 USPQ 605, 607 (TTAB 1970) ("The arguments and opinions of counsel for applicant are wholly insufficient to overcome the facts established by the Sugaya report."). *Compare In re Valenite Inc.,* 84 USPQ at 1348 (appellant submitted the declaration of its director of marketing who testified that appellant's customers regularly order its products by contacting the customer service department by telephone).

If applicant wished to show that orders for its industrial chain cannot readily be ordered by reference to particular goods and pricing information, and are regularly ordered by telephone following customer review of technical information in its specimens and consultation with employees of applicant, so that applicant's specimens are viewed as point of sale displays, applicant was obligated to introduce

such evidence to rebut the *prima facie* case made by the Trademark Examining Attorney. In cases such as this, where it is asserted that the nature of the goods and the consumers therefor require more involved means for ordering products, it is critical that the examining attorney be provided with detailed information about the means for ordering goods, and that such information be corroborated by sufficient evidentiary support, for example, a declaration from the applicant about its process for taking and filling orders, as in the *Valenite* case. At best, applicant's catalog pages provides applicant's telephone number and domain name as information about applicant; the telephone number and domain name do not constitute a means to order applicant's chains by telephone or the Internet.

B.      Second specimen

The second specimen is a four-page catalog or advertising brochure with the title "Gripper Chain." The mark appears in the lower right-hand corner of the first page. Applicant's contact information appears on the left-hand side of page four as shown below.



For the reasons set forth above regarding the "There's Nothing Standard about Tsubaki Performance" specimen, the "Gripper Chain" specimen does not

provide a means of ordering the product; it merely provides applicant's location and telephone number and URL.

In its June 6, 2012 response to an Office action, applicant submitted a six-page copy of the "Gripper Chain" specimen which added new pages 4 and 5. In small print on the bottom of pages 4 and 5, the catalog states that "Products listed in green are in stock and available for immediate delivery." Applicant argues that "[t]o a relevant customer, an engineer, that invites an order." Setting aside the fact that the second "Gripper Chain" catalog was not supported by a declaration that it was in use at least as early as the filing date of the application and, therefore, it may not be considered to be a specimen of use, the catalog is still nothing more than an advertisement. There are no sales forms, no pricing information, no offers to accept orders, and no special instructions for placing orders anywhere on the specimen.[13]

C.    The third and fourth specimens

The third and fourth specimens are very similar. They appear to be two – page specification sheets or flyers for "Stack Reclaimer Chains" and "WHX Series Heavy Duty Drag Chains." The mark appears in the upper right-hand corner of the first page of each document. Page one of the "Stack Reclaimer Chains" document also features the table shown below in the lower right-hand corner.

---

[13] Applicant made these same assertions and arguments in its appeal in application Serial No. 78698066, decided June 16, 2008, request for reconsideration denied August 11, 2008. That application involved the same mark and the specimen set forth in Section D *infra*. In that appeal, the Board pointed out that applicant presented counsel's arguments regarding the sales process but failed to submit any testimony or evidence from applicant itself and the Board compared applicant's failure to submit testimony and evidence in that application to the successful presentation of evidence in the *Valenite* case.

Reclaimer Chains    All dimensions are in inches unless otherwise indicated.

| Drawing Number | Pitch | A | B | C | E | F | J | K | T |
|---|---|---|---|---|---|---|---|---|---|
| 22568 | 9.843 | 2.85 | 1.77 | 4.31 | 4.31 | 4.31 | 4.04 | 0.83 | 0.50 |
| 22535 | 9.843 | | 6.26 | 4.69 | 8.65 | 2.82 | 1.79 | 1.09 | 1.00 |
| 22220 | 9.843 | 2.50 | 5.12 | 4.94 | 10.15 | 3.82 | 2.36 | 0.81 | 0.50 |
| 22490 | 9.843 | 3.45 | 4.00 | 4.88 | 9.89 | 4.62 | 2.92 | 0.81 | 0.50 |
| 24522* | 12.402 | 3.91 | 5.12 | 5.75 | 7.50 | 5.25 | 3.64 | 0.81 | 0.50 |

* Available with or without mid pitch spacer

Note: Reclaimer chains are normally manufactured on a made-to-order basis. A few standard styles are shown above. Dimensions are subject to change. Contact U.S. Tsubaki to obtain certified prints for design and construction.

Applicant's contact information appears on the bottom of page two as shown below.

**Engineering Chain Division**
U.S. Tsubaki, Inc.
1010 Edgewater Drive
Sandusky, OH 44807
Phone: (800) 537-6140
Phone: (419) 626-4560
Fax: (419) 626-5194

Distributor:

CATALOG NUMBER: L0820200          Printed in U.S. 02/08

Applicant points out that under the table in the "Stack Reclaimer Chains" document, the catalog states "Contact U.S. Tsubaki to obtain certified prints for design and construction," thus inviting the customers to contact applicant.[14] However, it is an invitation for customers to do further research (*i.e.*, obtain certified prints for design and construction), not to place an order. In fact, specimen Nos. 3 and 4 direct customers to distributors rather than having direct contact with applicant.

---

[14] Applicant's Brief, p. 4.

D.    Fifth specimen

The fifth specimen is a "one page solutions catalog sheet" which applicant asserts displays ordering information.  However, there is no ordering or contact information displayed on the fifth specimen.

E.    Sixth specimen

The sixth specimen is a "one page Visit Us sheet."  The mark is prominently displayed on the sheet and applicant's contact information is displayed on the bottom of the sheet as shown below.



Like the "Gripper Chain" specimen [Section B], the sixth specimen does not provide a means of ordering the product; it merely provides an invitation to visit the company's trade show booth.

Simply stating that customers are invited to contact applicant and providing applicant's contact information does not transform every catalog, website, advertising brochure, flyer, leaflet, etc. into a display used in association with the goods.  Congress did not create the use requirement of a trademark as a "straw man" to be so easily knocked down by *pro forma* statements that advertising materials displaying the mark are used in connection with actual sales of the product.  The use of advertising material in connection with the sales of a product does not *ipso facto* make such advertising material into a display used in association

15

with the goods sufficient to support technical trademark use for registration. *See In re Osterberg,* 83 USPQ2d 1220, 1224 (TTAB 2007).

The simple fact that applicant provides a telephone number or website URL for potential customers to contact applicant does not convert an ordinary advertising display into a point-of-sale display associated with the goods. By definition, "advertising" means "to announce or praise [a product, service, etc.] in some public medium of communication to *induce people to buy or use it.*" **THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE** (unabridged) (2d ed. 1987) (emphasis added). We take judicial notice of this definition. *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983). Therefore, to be more than mere advertising, a point-of-sale display associated with the goods must do more than simply promote the goods and induce a person to buy them; that is the purpose of advertising in general. The specimen must be "calculated to consummate a sale." *In re Bright of America, Inc.*, 205 USPQ 63, 71 (TTAB 1979). *See also In re Osterberg*, 83 USPQ2d at 1224 (A "list of distributors and a link to their websites" was not sufficient to make the webpage a display associated with the goods). In considering displays associated with the goods, the point-of-sale nature of the display has always been an important factor. *See In re Marriott*, 173 USPQ at 800 (menu); *Land's End, Inc. v. Manbeck*, 24 USPQ2d at 1316 (catalog); and *In re Shipley Co. Inc.*, 230 USPQ at 694 (trade show booth). Applicant's catalogs do not have the characteristics that would make a catalog a point-of-sale

display (*e.g.*, sales forms, ordering information, minimum quantities, cost, payment plans, shipping, etc.). After reviewing applicant's catalogs, prospective customers are not yet at the point of purchase and would need to contact applicant to obtain additional information. It is only after obtaining such information, which is not provided on the specimens, that the purchaser would be in a position to make a purchasing decision.

The specimens simply do not contain adequate information for making a decision to purchase the goods and placing an order and, therefore, we find that applicant's specimens are advertisements that do not show the mark TSUBAKI: THE CHOICE FOR CHAINS used in commerce as a trademark for chains and sprockets. The mere listing of telephone numbers for corporate headquarters and a website URL does not turn what is otherwise an ordinary advertisement into a point-of-sale display or a "display used in association with the goods" and, thus, into a valid specimen showing technical trademark use.

Having reviewed all of the specimens (and other material) submitted by applicant, we find that applicant has not submitted evidence showing proper use of its mark in commerce.

**Decision**: The refusal to register is affirmed.